UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT K. MONETTE,

                 Plaintiff,

     v.                                       **DECISION AND ORDER**
                                               05-CV-201S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

      1.     Plaintiff Robert Monette challenges an Administrative Law Judge's ("ALJ") determination that he has been disabled as defined by the Social Security Act ("the Act") since May 8, 2001, but not prior to that date.  Plaintiff alleges that he has been disabled since August 7, 1996, due to severe back and hip pain.  Plaintiff contends that his impairment has rendered him unable to work since that date.  He therefore asserts that he is entitled to payment of disability insurance benefits ("DIB") under the Act.

      2.     Plaintiff filed an application for DIB and Supplemental Security Income ("SSI") on October 2, 2001.  His applications were denied on March 7, 2002.[1]  Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Nancy Lee Gregg on November 12, 2003, and December 15, 2003.  Plaintiff appeared with counsel on both dates.  The ALJ considered the case *de novo*, and on March 9, 2004, issued a partially favorable decision finding that Plaintiff was disabled since May 8, 2001, but not prior to that date.  On February 18, 2005, the Appeals Council denied Plaintiff's request for review.  Plaintiff filed the current civil action on March 24, 2005, challenging Defendant's final

---

[1]Plaintiff's case is a disability redesign prototype test case.  Accordingly, the reconsideration step of his disability determination process was eliminated.  20 C.F.R. §§ 404.906(b)(4), 416.1406(b)(4).

decision.[2]

3.     On October 14, 2005, the Government and Plaintiff moved for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

---

[2]The ALJ's March 9, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

    6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

    7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

    8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S.

3

at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to the five-step process set forth above.  First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability, August 7, 1996.  (R. at 19).[3] Second, the ALJ concluded that Plaintiff's congential acetabular dysplasia, spinal disorders, osteoarthritis and myelopathy are "severe" impairments within the meaning of the Act.  (R. at 20).  Third, the ALJ determined that Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations.  (R. at 22).

At the fourth step, the ALJ assessed Plaintiff's residual functional capacity during three discrete periods.  <u>From August 7, 1996, to February 18, 2000</u>, the ALJ concluded that Plaintiff retained the residual functional capacity to lift, carry, push and pull up to thirty-five pounds occasionally and twenty-five pounds frequently, to sit, stand, or walk for up to two hours at a time and about six hours total in an eight-hour work day with normal breaks, but that Plaintiff had to avoid repetitive stooping and twisting at the waist.  (R. at 29).  <u>From February 18, 2000, through May 7, 2001</u>, the ALJ found that Plaintiff retained the residual functional capacity to lift, carry, push and pull up to thirty-five pounds occasionally and ten pounds frequently, to sit, stand or walk for up to one hour at a time, and that Plaintiff had

---

[3] Citations to the underlying administrative record are designated as "R."

to avoid repetitive twisting, turning, stooping and operation of foot control pedals, but that

he could still perform an eight-hour work day, five days a week with a sit/stand option.  (R.

at 29).  <u>As of May 8, 2001</u>, that ALJ found that Plaintiff retained the residual functional

capacity to lift, push and pull up to thirty-five pounds occasionally and ten pounds

frequently, to sit for up to one hour at a time, but for less than six hours in an eight-hour

work day, to stand and/or walk for up to one hour but for no more than two hours total in

an eight-hour work day, that Plaintiff had to avoid repetitive twisting, turning, stooping,

crawling, and crouching, and that he could kneel and reach only occasionally, with no

overhead reaching.  (R. at 29).  Given Plaintiff's residual functional capacity during these

discrete periods of time, the ALJ concluded that Plaintiff was unable to perform any of his

past relevant work.  (R. at 30).

At the final step, the ALJ concluded that between August 7, 1996, and February 18,

2000, Plaintiff had the residual functional capacity to perform the full range of light work.

(R. at 32).  The ALJ further concluded that between February 18, 2000, to May 8, 2001,

Plaintiff's residual capacity for a full range of light work was significantly reduced by his

need for a sit/stand option.  (R. at 32).  Considering Plaintiff's age, education, work

experience, and residual capacity for light work, the ALJ determined that Plaintiff was not

under a "disability" from August 7, 1996, through May 7, 2001.  (R. at 31-33).  Ultimately,

the ALJ determined that Plaintiff was under a disability, as defined by the Act, beginning

May 8, 2001, through the date of her decision, but not prior thereto.  (R. at 33, 36).

Plaintiff met the disability insured status requirements of the Act for purposes of

entitlement to DIB only through June 30, 1997.  However, the ALJ found that Plaintiff was

not under a disability at any time through that date.  Accordingly, the ALJ determined that

under 20 C.F.R. § 404.1520, Plaintiff was not entitled to DIB payments.  (R. at 33).

Plaintiff's insured status for DIB is not, however, a consideration for SSI eligibility. Accordingly, since Plaintiff has been under a disability since May 8, 2001, the ALJ determined that under 20 C.F.R. § 416.920, he was entitled to SSI payments.  (R. at 33)

10.     Plaintiff's first challenge to the ALJ's decision is that she rejected the opinion of Plaintiff's treating orthopedic physician, Dr. Cameron Huckell, in favor of non-medical evidence.   Plaintiff makes specific reference to Dr. Huckell's opinion, rendered on November 4, 2003, that Plaintiff was unable to sit, stand, or walk for more than one-half hour to one hour at a time, and then would need to lie down for approximately one-half hour due to pain.  (R. at 441).  Dr. Huckell opined that Plaintiff was limited in this regard since June 1996.  (R. at 441).  Plaintiff contends that by rejecting Dr. Huckell's opinion that Plaintiff had been severely restricted since 1996, the ALJ did not properly apply the "treating physician rule."

11.     According to the "treating physician rule,"[4] the ALJ must give controlling weight to the treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

12.     Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.   Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford a treating physician's

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

opinion: (1) the length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

13.    Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of Dr. Huckell's opinion given the lack of objective abnormal neurological findings, Plaintiff's daily activities, and the fact that he required no medication during the relevant period.[5]  As an initial matter, this Court notes that although Dr. Huckell opined that Plaintiff had been severely restricted since 1996, the first time Dr. Huckell examined Plaintiff was on February 18, 2000.  (R. at 289-90).  While the ALJ did give great weight to Dr. Huckell's opinion regarding Plaintiff's medical condition in May and August 2001, she declined to adopt his retrospective opinion regarding Plaintiff's earlier limitations because she found it was unsupported.  (R. at 28-29).

Specifically, the ALJ noted the lack of objective neurological evidence which would support a finding that Plaintiff was severely restricted between August 7, 1996, and June 30, 1997.  (R. at 29).  As the ALJ noted, a July 1996 examination by Dr. Howard Markowitz, an orthopedist, revealed no neurological signs or symptoms.  (R. at 23, 209-10).  On examination, Dr. Markowitz found that Plaintiff could "easily stand on his heels and toes," and that his sensory, motor and deep tendon reflexes were all within normal limits.  (R. at 23, 209).  Moreover, straight leg raising was negative.  (R. at 23, 209).  Dr. Markowitz noted

---

[5] The disputed period is between the date of Plaintiff's alleged onset of disability, August 7, 1996, and the last date that Plaintiff met the disability insured status under the Act, June 30, 1997.

that Plaintiff's x-rays from June 1996 showed well formed lumbar segments, a normal degree of lumbar lordosis, no gross disc height collapse, and no evidence of transverse process fracture, spondylolisthesis, or spondylolysis. (R. at 23, 210). Indeed, as noted by the ALJ, during the early period of Plaintiff's alleged disability, his treatment was limited to chiropractic care. (R. at 25).

The ALJ also noted that Dr. Robert M. Lifeso, an orthopedic surgeon who examined Plaintiff in September 1996, reported that Plaintiff's lumbar spine x-rays were reasonably normal, although he suspected that he had a large disc prolapse at L5-S1, due to the absence of ankle reflexes. (R. at 20, 220). A follow up magnetic resonance imaging ("MRI") scan only showed a "central to right L3-4 disc," with no other significant findings. (R. at 217). As the ALJ noted, the MRI did not reveal a disc prolapse or any positive findings at L5-S1 disc, and therefore, did not confirm Dr. Lifeso's suspicions. (R. at 20).[6] Significantly, there were no other objective, diagnostic findings with respect to Plaintiff's back condition during the relevant period on the record before the ALJ. Ultimately, the ALJ found that this lack of medical evidence contradicted Dr. Huckell's retrospective opinion that Plaintiff had been severely restricted since June 1996.

In so finding, the ALJ also relied on certain non-medical evidence including the fact that Plaintiff had moved to the country, purchased farm animals, and planned to engage in farming activities. (R. at 24, 217). The ALJ noted that claimant attempted to work as a stagehand in 1997, but he stopped upon the advice of his lawyer. (R. at 25, 26). In

---

[6]The ALJ noted that in 1998, Dr. Lifeso opined that Plaintiff could "continue with all activities" or "engage in any occupation he wishes within the realm of comfort." (R. at 24, 217-18). Moreover, given Dr. Lifeso's specialty, the ALJ afforded this opinion significant weight. Plaintiff objects to the ALJ's reliance on Dr. Lifeso's opinion, which he contends is so vague that it cannot constitute substantial evidence to support a disability finding as held by the Second Circuit in Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000). However, it is clear that the ALJ did not rely exclusively on Dr. Lifeso's statement in finding that Plaintiff was not disabled between August 7, 1996, and June 30, 1997. Rather, the ALJ relied instead on the absence of positive neurological findings during this relevant period. (R. at 29). For the reasons discussed herein, this Court finds that the ALJ's disability finding is supported by substantial evidence, and that her partial reliance on Dr. Lifeso's opinion does not render her finding invalid.

addition, she noted that Plaintiff admitted that he did some hunting and fishing.  (R. at 26).

The ALJ opined that farming and feeding chores "require[ ] more than sedentary exertion,"

and that it was "hard to believe that a person who had disabling pain would even attempt

to work as a stagehand."  (R. at 26-27).

The ALJ examined Plaintiff's prescription drug use and noted that according to his

pharmacy records, he did not fill a single prescription until April 17, 1998.  (R. at 25, 207).

The ALJ also referred to Plaintiff's report that he "tried to stay away from prescription

medication from 1996 through 1999," but instead used over the counter medication, a fact

which she felt belied Plaintiff's claim that he had not been able to "handle the pain" since

1996.  (R. at 25, 197).  That Plaintiff did not need or was not prescribed pain medication

suggested to the ALJ that Plaintiff's pain was tolerable during that time.  Lastly, the ALJ

noted the substantial gap -- more than five years -- between Plaintiff's alleged onset date

and the date he filed for benefits.  (R. at 23).

This Court finds that the ALJ's assessment of the early period of Plaintiff's alleged

disability was proper.  It is well-established under the regulations and rulings of the

Administration that an ALJ may consider evidence of a claimant's daily activities, the type

of medication, if any, the claimant uses to alleviate pain, and other factors concerning

functional limitations and restrictions due to pain.  See 20 C.F.R. § 404.1529(c)(3); Social

Security Ruling ("S.S.R.") 96-7p.  This Court is not persuaded that the ALJ substituted her

own medical opinion for that of Dr. Huckell, as Plaintiff contends.  Rather, the ALJ's

decision reflects her extensive evaluation of all the medical evidence in the record, and her

appropriate assessment of the medical source opinions.  (R. at 20-29).  As set forth in the

regulations, the ALJ is charged with evaluating opinion evidence and deciding what weight

to give any medical opinion, including those rendered by treating sources.  See 20 C.F.R.

§ 404.1527(d).  An opinion that is not based on clinical findings will not be accorded as

much weight as an opinion that is well supported.  See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Based on the foregoing, this Court finds that it was not improper for the ALJ to reject Dr. Huckell's early disability assessment, given the retrospective nature of his opinion, its inconsistency with the record as a whole, and most importantly, the lack of objective neurological findings supporting that assessment.  See 20 C.F.R. § 404.1527(d)(3)-(4).  It is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts in the record.  See Richardson, 402 U.S. at 399.  Under the circumstances of this case, it cannot be said that the ALJ arbitrarily substituted her own judgment for that of Plaintiff's treating physician.  Rather, this Court finds that the ALJ appropriately afforded less weight to the narrow, retrospective conclusion contained in Dr. Huckell's report regarding Plaintiff's restrictions in 1996.

14.    Plaintiff's second argument is that the ALJ erred by failing to solicit expert medical evidence regarding the exact onset date of his disability.  This Court does not agree.  The determination of a disability onset date must have a legitimate medical basis. See SSR 83-20.  Consistent with this requirement, an ALJ should call a medical advisor when it is necessary to infer the onset date from ambiguous medical evidence, *i.e.*, when precise medical evidence is not available.  SSR 83-20.  On the other hand, where the medical record reflects the date of onset, it is unnecessary for an ALJ to call a medical advisor to infer when the disability began.

This Court finds that the record in this case unambiguously reflects that Plaintiff became restricted to the point of being disabled on May 8, 2001, as the ALJ determined. In a report issued on that date, Dr. Huckell, for the first time, reported that Plaintiff had a reduced range of motion and paraspinal muscle spasm.  (R. at 283).  Dr. Huckell noted

that Plaintiff had to push up on his hands to "unweight his discs," and had to straighten

from a bending posture by "walking up" his thighs with his hands.  (R. at 283).  Dr. Huckell

did not make these positive findings during Plaintiff's previous visit approximately four

months earlier on January 18, 2001.  (R. at 284).  At that time, Dr. Huckell found that

Plaintiff was "still fully ambulatory and neurologically intact."  (R. at 284).  In this respect,

it was not until May 8, 2001, that Dr. Huckell found Plaintiff to be "moderately to markedly

disabled."  (R. at 283).

The record also suggests that Plaintiff's pain did not become disabling until May 8,

2001, or thereafter.  For example, at Plaintiff's examination on August 28, 2001, Dr.

Huckell noted that Plaintiff "now" had to sleep in a separate room because he tossed and

turned due to pain.  (R. at 281).  On that date, Dr. Huckell reported that Plaintiff's pain "*has*

*become* worse" and "*has become* intractable and intolerable."  (R. at 281-82) (emphasis

added).  This indicates that Plaintiff did not report intolerable pain and/or Dr. Huckell did

not find Plaintiff to be debilitated by his pain prior to August 28, 2001.  In either case, Dr.

Huckell's report constitutes clear evidence that Plaintiff's condition worsened between

January 18, 2001, and August 28, 2001.  This Court finds that it was proper for the ALJ to

rely on Dr. Huckell's objective findings from his examinations of Plaintiff in January, May

and August 2001, to establish that he became disabled on May 8, 2001; and further, that

this onset date is consistent with the medical record as a whole.  Given the competent and

precise nature of the medical evidence, it was not necessary for the ALJ to call a medical

consultant to infer the date on which Plaintiff became disabled.

15.     After carefully examining the administrative record, this Court finds that

substantial evidence supports the ALJ's decision in this case, including the medical

opinions and the objective medical evidence.  It is clear to this Court that the ALJ

thoroughly examined the record, afforded appropriate weight to all of the medical evidence, including the opinion of the Plaintiff's treating physician, Dr. Huckell, and properly determined the onset date of Plaintiff's disability from the evidence.  Accordingly, finding no reversible error in the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.


    IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

    FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

    FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

    SO ORDERED.


Dated:   March 28, 2006
         Buffalo, New York


                                        /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                        United States District Judge